# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————

X CORP.,
*Plaintiff-Appellant/Cross-Appellee,*
v.
WORLD FEDERATION OF ADVERTISERS, INC.,
*Defendant-Appellee/Cross-Appellant,*
v.
MARS, INCORPORATED; CVS HEALTH CORPORATION; NESTLE SA; NESTLE USA, INCORPORATED; ABBOT LABORATORIES; COLGATE-PALMOLIVE COMPANY; LEGO A/S; LEGO BRAND RETAIL, INCORPORATED; PINTEREST, INCORPORATED; TYSON FOODS, INCORPORATED; SHELL USA, INCORPORATED; SHELL BRANDS INTERNATIONAL AG; ORSTED SERVICES A/S,
*Defendants-Appellees.*

———————————

On Appeal from the United States District Court for the
Northern District of Texas,
No. 24-cv-114

———————————

## BRIEF OF THE AMERICAN ANTITRUST INSTITUTE (AAI) AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY

———————————

DAVID O. FISHER
  *Counsel of Record*
RANDY STUTZ
1025 Connecticut Avenue, NW
Suite 1000
Washington, D.C. 20036
(202) 905-5420
dfisher@antitrustinstitute.org

*Counsel for Amicus Curiae*

August 12, 2026

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for amicus curiae the American Antitrust Institute (AAI) certifies that all interested persons described in the fourth sentence of Rule 28.2.1 who have an interest in the outcome of this case are listed in the Certificate of Interested Persons in Plaintiff-Appellant/Cross-Appellee's brief, and further certifies the following:

The American Antitrust Institute (AAI) is a non-profit corporation and, as such, no entity has any ownership interest in it. AAI has no financial interest in the outcome of this litigation.

David O. Fisher is counsel for AAI and has no financial interest in the outcome of this litigation.

s/ David O. Fisher

Dated: August 12, 2026

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.....................................................ii

TABLE OF AUTHORITIES ............................................................... iv

INTEREST OF AMICUS CURIAE..................................................1

SUMMARY OF ARGUMENT....................................................................1

ARGUMENT ..............................................................................4

The Antitrust Injury Doctrine Does Not Weed Out Unmeritorious Claims......4

    A.    The Antitrust Injury Doctrine Weeds Out Claims that Would Not Fulfill the Statutory Purpose of the Antitrust Laws if the Plaintiff Won.........................................................................8

    B.    The Antitrust Injury Doctrine Cannot Weed Out a Claim on the Merits.....................................................................10

        1.    The district court did not apply *Brunswick*...........................11

        2.    The merits do not determine antitrust injury. .....................13

        3.    The proper inquiry here is whether X plausibly alleged harm to competition on the merits under *Twombly*.............22

CONCLUSION..................................................................25

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**<u>CASES</u>**

*Allen v. Wright,*
  468 U.S. 737 (1984)....................................................................................5

*Am. Soc'y of Mech. Engineers v. Hydrolevel Corp.,*
  456 U.S. 556 (1982)..................................................................................11

*Associated Gen. Contractors of Cal., Inc. v. Carpenters,*
  459 U.S. 519 (1983)........................................................ 4, 5, 8, 14, 15

*Atl. Richfield Co. v. USA Petroleum Co.,*
  495 U.S. 328 (1990)........................................................ 9, 12, 17, 18

*Bank of Am. Corp. v. City of Miami,*
  581 U.S. 189 (2017) ...................................................................................5

*Bd. of Trade v. United States,*
  246 U.S. 231 (1918)....................................................................................7

*Bell v. Dow Chemical Co.,*
  847 F.2d 1179 (5th Cir. 1988) ..................................................................4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................2, 4

*Bennett v. Spear,*
  520 U.S. 154 (1997)..................................................................................10

*Blue Shield of Va. v. McCready,*
  457 U.S. 465 (1982)..................................................................................22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
  429 U.S. 477 (1977).......................................... 2, 4, 6, 7, 9, 11, 12, 21

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
  404 U.S. 508 (1972)..................................................................................11

*Cargill, Inc. v. Monfort of Colo., Inc.*,
  479 U.S. 104 (1986)................................................................................4, 9

*Cass Student Adver., Inc. v. Nat'l Educ. Adver. Serv., Inc.*,
  516 F.2d 1092 (7th Cir. 1975) ....................................................... 22

*City of Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021) ...........................................................19

*Conwood Co. v. United States Tobacco Co.*,
  290 F.3d 768 (6th Cir. 2002) ..........................................................11

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005) ..................................................... 15, 19

*Discon, Inc. v. Nynex Corp.*,
  No. 90-CV-546A, 1992 U.S. Dist. LEXIS 22722 (W.D.N.Y., June 23, 1992) ...24

*Doctor's Hosp. v. Se. Med. Alliance*,
  123 F.3d 301 (5th Cir. 1997) ......................................... 4, 9, 11, 15, 19

*Eichorn v. AT&T Corp.*,
  248 F.3d 131 (3d Cir. 2001) ............................................................18

*FTC v. Cement Institute*,
  333 U.S. 683 (1948).........................................................................20

*Gatt Communs., Inc. v. PMC Assocs.*,
  711 F.3d 68 (2d Cir. 2013) ..............................................................14

*Gelboim v. Bank of Am. Corp.*,
  823 F.3d 759 (2d Cir. 2016) ................................................. 13, 15, 17

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
  571 F.3d 672 (7th Cir. 2009) ...........................................................18

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007)..........................................................................7

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
  72 F.3d 1538 (11th Cir. 1996) .........................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)......................................................... 5, 9, 10,  15, 21

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................4

*Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*,
  334 U.S. 219 (1948)........................................................................7

*Marucci Sports, L.L.C. v. NCAA*,
  751 F.3d 368 (5th Cir. 2014) ......................................................17

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012)......................................................................10

*N. Pac. Ry. Co. v. United States*,
  356 U.S. 1 (1958)........................................................................6, 8

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
  435 U.S. 679 (1978).........................................................................6

*Nynex Corp. v. Discon*,
  525 U.S. 128 (1998)................................................................ 7, 8, 24

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018).........................................................................7

*Pfizer, Inc. v. Gov't of India*,
  434 U.S. 308 (1978) .......................................................................8

*Sanger Ins. Agency v. Hub Int'l, Ltd.*,
  802 F.3d 732 (5th Cir. 2015) ................................................... 14, 18

*SAS of P.R., Inc. v. P.R. Tel. Co.*,
  48 F.3d 39 (1st Cir. 1995).............................................................13

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001).........................................................11

*Walker Process Equipment, Inc. v. Food Mach. & Chem. Corp.*,
  382 U.S. 172 (1965).......................................................................11

*Willow Creek Fuels, Inc. v. Farm & Home Oil Co.*,
 No. 08-5417, 2009 U.S. Dist. LEXIS 85400 (E.D. Pa. Sept. 18, 2009)...............18

**STATUTES**

15 U.S.C. § 15...............................................................................................7, 11

15 U.S.C. § 26.....................................................................................................7

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law (5th ed. 2025)......... 13, 21

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law (4th ed. 2014)................15

Ronald W. Davis, *Standing on Shaky Ground: The Strangely Elusive
 Doctrine of Antitrust Injury*, 70 Antitrust L.J. 697 (2003) ............ 6, 12, 16, 17, 21

Statement of Chairman Andrew M. Ferguson at 4–5, Fed. Trade Comm'n,
 *In the Matter of Omnicom Group / the Interpublic Group of Cos.*,
 Matter No. 2510049 (June 23, 2025)..................................................................19

## INTEREST OF AMICUS CURIAE[1]

The American Antitrust Institute ("AAI") is an independent nonprofit organization devoted to promoting competition that protects consumers, businesses, and society. It serves the public through research, education, and advocacy on the benefits of competition and the use of antitrust enforcement as a vital component of national and international competition policy. AAI enjoys the input of an Advisory Board that consists of over 130 prominent antitrust lawyers, law professors, economists, and business leaders. See http://www.antitrustinstitute.org.[2]

## SUMMARY OF ARGUMENT

In this closely watched antitrust case, Elon Musk's X, Inc. ("X") alleges that major national advertisers, acting through the World Federation of Advertisers' Global Alliance for Responsible Media ("GARM"), unlawfully boycotted X, violating Section 1 of the Sherman Act by collectively agreeing to withhold advertising revenue from X under the guise of brand safety standards. Opening Brief for Plaintiff-Appellant ("Opening Br.") at 1. The defendants counter that they have not agreed to any boycott but rather acted unilaterally and rationally in response to

---

[1] All parties consent to the filing of this amicus brief. No counsel for a party authored this brief in whole or in part, and no party, party's counsel, or any other person—other than amicus curiae or its counsel—has contributed money that was intended to fund preparing or submitting this brief.
[2] Individual views of members of AAI's Board of Directors or Advisory Board may differ from AAI's positions.

market forces, based on changes in the quality of advertising space available on the X platform. ROA.999. The district court dismissed X's complaint but issued an ambiguous and inscrutable ruling. After drawing a conclusion that X failed to adequately allege harm to competition on the merits and a conclusion that X failed to adequately allege antitrust injury as a matter of statutory standing, it failed to identify the grounds for dismissal on which it relied. ROA.2443–2450. The difference between antitrust injury and an antitrust violation matters greatly, and the district court's confused and confusing opinion reveals that clarification is sorely needed.

Amicus AAI takes no position on whether dismissal was the right result or remand is required. But if the district court relied on *Brunswick*'s antitrust injury doctrine, then it misapplied it, and if it relied on *Twombly*'s plausibility standard, then it did not say so. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (defining antitrust injury); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (defining pleading requirements for Section 1 claims). The district court's conclusion that "there is no antitrust violation here" bears on the question of whether the substantive elements of the plaintiff's claim were plausibly pled. ROA.2449. Its conclusion that "X has not stated an antitrust injury" bears on the question of whether X has statutory standing to sue. The merits conclusion does not bear on whether X has standing.

AAI submits this brief to clarify the distinction that eluded the district court. The antitrust injury doctrine asks whether the antitrust laws afford a cause of action to pursue the type of injury claimed. The doctrine presumes Congress passed the antitrust laws with background principles in mind, namely that the laws seek to protect competition and afford private causes of action only for injuries caused by a competition-reducing aspect of illegal conduct. Applying the doctrine is an exercise in statutory interpretation to determine whether Congress intended to permit the kind of relief sought by the claim, not whether the plaintiff adequately pleaded the claim's substantive merits elements. In this Circuit and elsewhere, courts assume a violation before applying the antitrust injury test because doing so is often necessary to apply the test coherently. But once a court concludes there is no harm to competition, the test cannot be applied at all and should be bypassed.

The district court was right to perceive that the antitrust injury doctrine is a useful device for weeding out claims at early stages of litigation but wrong to perceive it as useful for weeding out implausible claims. The doctrine is only useful for weeding out claims that seem plausible. Where a claim looks facially plausible to the court but it would be contrary to the Congressional purpose of the antitrust laws if the plaintiff were to win and obtain the relief it seeks, the court can dismiss the case on antitrust injury grounds for expediency's sake, without adjudicating the underlying merits on the pleadings. But the doctrine is not a license to weed out

claims on the merits. That interpretation creates an end-run around pleading law and contravenes Supreme Court precedent and the purpose of the doctrine. *Twombly*'s plausibility standard applies to a plaintiff's merits allegations; the *Brunswick* standard applies to its allegations of antitrust injury.

## ARGUMENT

**The Antitrust Injury Doctrine Does Not Weed Out Unmeritorious Claims.**

Antitrust injury is a necessary element of a private antitrust claim, but it is not a merits element. It is one of five factors that determine standing to bring suit. *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 525, 540 (1983); *Bell v. Dow Chemical Co.*, 847 F.2d 1179, 1182 (5th Cir. 1988) ("Antitrust injury is a component of the standing inquiry."). This type of standing is distinct from Article III standing, which requires injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Referred to as "antitrust standing," *Doctor's Hosp. v. Se. Med. Alliance*, 123 F.3d 301, 305 (5th Cir. 1997), it applies "constraints comparable" to "common-law limitations" on "the class of persons who may maintain a private damages action under the antitrust laws." *Associated Gen. Contractors*, 459 U.S. at 529, 533; *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986) (extending requirement to suits for injunctive relief).

Although antitrust standing is sometimes described as "prudential standing," that label is a misnomer. To assess all of the five factors that determine antitrust

standing, including antitrust injury, courts must use appropriate methods of statutory interpretation, not their subjective sense of prudence. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 125 (2014) (Scalia, J.) (Who is "authorized to sue" under any statute is "a question of statutory interpretation" and to call this "prudential standing" is "misleading"). The proper goal is to "'ascertain,' as a matter of statutory interpretation, the 'scope of the private remedy created by' Congress in … the Clayton Act, and the 'class of persons who [could] maintain [an] action under' that legislatively conferred cause of action." *Id*. at 126 (quoting *Associated Gen. Contractors*, 459 U.S. at 529).

Like similar doctrines that apply to other statutes, the antitrust injury doctrine presumes that Congress legislates against "two relevant background principles," namely "zone of interests and proximate causality." *Lexmark*, 572 U.S. at 129–140 (applying zone-of-interest and proximate-cause tests to private Lanham Act claims); *see also Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 189–91 (2017) (applying same to private Fair Housing Act claims). Based on the first principle—the "presum[ption] that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked,'" *Lexmark*, 572 U.S. at 129 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984))—the antitrust injury doctrine asks whether the plaintiff seeks relief that is causally linked not only to the antitrust violation itself, but to what "the antitrust laws are intended to prevent"

and "makes the defendant's acts unlawful." *Brunswick*, 429 U.S. at 489; *see* Ronald W. Davis, *Standing on Shaky Ground: The Strangely Elusive Doctrine of Antitrust Injury*, 70 Antitrust L.J. 697, 725 (2003) (explaining that the different language used in *Brunswick*'s two parts "say the same thing, the first time clearly … and the second time less precisely"). The appropriate starting points therefore are (1) what the Sherman Act is intended to prevent, and (2) the class of persons the Clayton Act authorizes to sue for damages and injunctive relief, both of which the plaintiff seeks in its prayer for relief. ROA.540.

Regarding the first point, the Supreme Court has held that the Sherman Act reflects a "legislative judgment" that "competition is the best method of allocating resources." *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695 (1978). Because the Act is premised on "faith in price competition as a market force," *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 348 (1982) (internal quotation and citation omitted), the Court has held that "[t]he statutory policy precludes inquiry into the question of whether competition is good or bad," even if there may be "exceptions to the presumed consequences of competition." *Prof'l Eng'rs*, 435 U.S. at 695; *see also N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958). Accordingly, to plead a substantive antitrust violation under Section 1 of the Sherman Act, the Court requires that a private plaintiff must allege an agreement that harms the plaintiff by harming "the competitive process, *i.e.*, . . . competition itself."

*Nynex Corp. v. Discon*, 525 U.S. 128, 135 (1998). Under *Brunswick*, Section 1 is thus properly construed as intended to prevent restraints that "may suppress or even destroy competition." *Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918); *see also Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018) ("The goal is to 'distinguis[h] between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest.'") (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007)).

Regarding the second, Sections 4 and 16 of the Clayton Act are "in essence … remedial provision[s]." *Brunswick*, 429 U.S. at 485. Section 4 authorizes "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws [to] sue therefor," and Section 16 authorizes "[a]ny person … to sue for and have injunctive relief … against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. §§ 15, 26. The Supreme Court has held that this language "is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated." *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948) (noting that "[t]he statute does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers."). Indeed, "[a] literal reading of the statute is broad enough to encompass every harm that can be attributed directly or

indirectly to the consequences of an antitrust violation." *Associated Gen. Contractors*, 459 U.S. at 529; *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978) ("Congress used the phrase 'any person' intending it to have its naturally broad and inclusive meaning."). The antitrust injury doctrine, and the other factors that determine antitrust standing, limit this broad language insofar as "the substantive content" of the Act's remedial provisions "draws meaning from its common-law antecedents." *Associated Gen. Contractors*, 459 U.S. at 529.

**A.     The Antitrust Injury Doctrine Weeds Out Claims that Would Not Fulfill the Statutory Purpose of the Antitrust Laws if the Plaintiff Won.**

Because "the policy unequivocally laid down by the [Sherman] Act is competition," *N. Pac. Ry.*, 356 U.S. at 4, Section 1 does not apply to agreements that harm consumers if their injuries are not causally linked to a harm to competition. The Supreme Court clarified this point in *Nynex*, when it conceded that the defendant's behavior "hurt consumers by raising [prices]" but denied liability because the consumer injury was not proximately caused by "a less competitive market." 525 U.S. at 136. The Court explained that "other laws, for example, 'unfair competition' laws, business tort laws, or regulatory laws, provide remedies" for injuries that do not flow from harm to the competitive process. *Id*. at 137. The zone-of-interests test required by the antitrust injury doctrine therefore boils down to the question of whether the plaintiff claims an injury "stem[ming] from a competition-

reducing aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (hereinafter "ARCO").

Importantly, in applying the test, "[w]e do not ask whether in our judgment Congress *should* have authorized [the plaintiff's] suit, but whether Congress in fact did so." *Lexmark*, 572 U.S. at 128. "Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Id*. (citation omitted). Thus, while it is "inimical" to the purpose of the Sherman Act to permit a cause of action for "losses stemming from continued competition," *Cargill*, 479 U.S. at 109–10 (quoting *Brunswick*, 249 U.S. at 488), it is equally so to deny a cause of action for losses stemming from a competition-reducing aspect of an alleged violation, even if the cause of action is extremely unlikely to prove meritorious. *See Lexmark*, 572 U.S. at 128.

The antitrust injury doctrine thus asks only whether the plaintiff "is entitled to a chance to prove its case" under the text of the Clayton Act's remedial provisions and their common-law antecedents. *See id*. at 140; *Doctor's Hosp.*, 123 F.3d at 306 ("Another way to explain ["antitrust injury for standing purposes"] is that it ensures that the plaintiff's *demand for relief* ultimately serves the purposes of antitrust law.") (emphasis added). And as the Court has said in other contexts, "the test … forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with

the purposes implicit in the statute that it cannot reasonably be assumed that' Congress authorized that plaintiff to sue." *Lexmark*, 572 U.S. at 130 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)); *but see id.* (noting that context and "the provisions of law at issue" affect "the breadth of the zone of interests.") (quoting *Bennett v. Spear*, 520 U.S. 154, 163 (1997)).

**B.      The Antitrust Injury Doctrine Cannot Weed Out a Claim on the Merits.**

To whatever extent the district court dismissed on antitrust injury grounds, it did so based on its own sense of what prudence dictates, not statutory interpretation. It did not make the finding that the antitrust injury test requires: that the Clayton Act does not authorize X's cause of action because the relief afforded would be outside the zone of the Sherman Act's statutory interest in preventing competition-reducing conduct. Omitting a critical part of this Court's statement that the doctrine "is often a useful filter at an early stage of litigation" for "ordinary tort and contract actions … *that do not fulfill [the antitrust laws'] goals*," *Doctor's Hosp.*, 123 F.3d at 306 (emphasis added), the district court characterized the doctrine as a filter for claims that do not rise above tort or contract actions on the merits. ROA.2443 (describing doctrine as a useful filter for actions that "merely *state* ordinary tort or contract claims") (emphasis added). That approach would wrongly allow antitrust standing

to "become the tail wagging the dog." *Doctor's Hosp.*, 123 F.3d at 306. [3]

### 1.     The district court did not apply *Brunswick*.

The Supreme Court defined the requisite finding when it first announced the antitrust injury doctrine in *Brunswick*. There, a bowling alley sought to recover for a claimed injury on grounds that a series of illegal mergers kept one of its rivals from going bankrupt, subjecting the plaintiff to lost profits caused by the rival's continued competition. 429 U.S. at 480–81, 483. The Court explained that while the plaintiff's injury occurred "by reason of" an antitrust violation, it did not occur "'by reason of' that which made the acquisitions unlawful." *Id*. at 488 (quoting 15 U.S.C. § 15).

Relying on statutory interpretation, the Court found that the antitrust laws are not "merely indifferent" to the plaintiff's claimed injury. *Id*. at 485, 488. Rather, it found that, while Section 4 of the Clayton Act's broad language protects rivals against profits lost due to practices forbidden by the antitrust laws, it would be "inimical to the purpose of [the antitrust] laws" to permit recovery for profits *gained*

---

[3] The district court seemed to think it should be skeptical of antitrust claims where the alleged conduct would satisfy an element of a tort or contract claim, but that intuition is wrong. Courts resort to the expediency of the antitrust injury doctrine where permissible in these cases not because the merits are easily dismissed, but because they require careful attention. Numerous antitrust violations premised on such conduct have been sustained because they harm *both* competition *and* competitors. *See, e.g., Am. Soc'y of Mech. Engineers v. Hydrolevel Corp.*, 456 U.S. 556 (1982); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972); *Walker Process Equipment, Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965); *Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002); *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001).

"had competition been *reduced*." *Id*. (emphasis added).

The district court cited the *Brunswick* standard as quoted by this Court in *Rx Sols., Inc. v. Caremark, LLC*, 164 F.4th 436, 444 (5th Cir. 2026), ROA.2443–44, 2447, but it did not apply it. It made a finding instead that "there is no antitrust violation" because X "has failed to state either of its claims under the Sherman Act" insofar as "X does not allege that Defendants acted to restrain competition." ROA.2449. While it is tautologically true that a plaintiff does not suffer antitrust injury if the defendant's conduct does not violate the antitrust laws, that is a reason to bypass the antitrust injury doctrine, not a reason to invoke it. Davis at 732 ("[A]ntitrust injury is an issue that only comes into play as and when it appears that all the elements of liability have been adequately alleged.").[4]

Basing a lack of antitrust injury on the lack of an antitrust violation contravenes Supreme Court precedent. The Court's precedent rests the appropriate inquiry on the premise that a conclusion on the merits has not yet been reached. *See Brunswick*, 429 U.S. at 489 (Plaintiff must allege injury that is "the type of loss that the *claimed* violations … would be likely to cause.") (emphasis added) (quoting *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 125 (1969)); *ARCO*, 495 U.S. at 334 (Injury must be "attributable to an anticompetitive aspect of the practice

---

[4] The statement is tautological in the sense that it is only true if its premise is true. Absent a violation, no plaintiff suffers an injury within the zone of interests of any statute, *because* the violation is absent.

*under scrutiny*.") (emphasis added). Drawing a merits conclusion and then denying antitrust injury on that basis contravenes the Court's method of analysis. *See Gelboim*, 823 F.3d at 777 n.16 (Defendants' position that "harm to competition is necessary to show antitrust injury … cannot be reconciled with Supreme Court precedent.").

### 2. The merits do not determine antitrust injury.

The district court is not the first to struggle to distinguish antitrust injury from an antitrust violation. The Areeda & Hovenkamp treatise maintains a catalogue of cautionary tales in a lengthy footnote listing cases that were dismissed for "failure to show standing" that would have been "more properly dismissed for failure to show a violation." Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law § 335 n.62 (5th ed. 2025) (hereinafter "Areeda & Hovenkamp"). *See also SAS of P.R., Inc. v. P.R. Tel. Co.*, 48 F.3d 39, 43 (1st Cir. 1995) ("[C]ourts sometimes have difficulty, well justified in certain cases, in separating standing or antitrust injury issues from two other problems: whether there has been an antitrust violation at all, and whether the plaintiff has suffered any injury causally (in the 'but for' sense) related to the challenged conduct."); *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 770 (2d Cir. 2016) ("[I]t is easy to blur the distinction between an antitrust violation and an antitrust injury.").

Because the antitrust injury doctrine, as well as the other four factors that determine antitrust standing, locate "a point beyond which the wrongdoer should not be held liable," *Associated Gen. Contractors*, 459 U.S. at 534–35, drawing the proper distinction becomes increasingly difficult the more the court begins to suspect the defendant has not done anything wrong. *Gatt Communs., Inc. v. PMC Assocs.*, 711 F.3d 68, 76 n.9 (2d Cir. 2013) (The antitrust injury inquiry puts courts "in the difficult position of positing a rationale for the antitrust laws' prohibition of conduct that may, in fact, not be prohibited."). And here, the advertiser defendants invited the district court into its error by improperly arguing that they did not cause antitrust injury *because* they did not do anything wrong. *See, e.g.*, ROA.1019 (arguing that X failed to "plausibly" plead "harm to the competitive process in the alleged market" on the merits but then mischaracterizing "that" absence of harm as a lack of antitrust injury).[5]

But the federal circuits, including this Court, avoid that error by assuming a violation for purposes of applying the antitrust injury test. *Sanger Ins. Agency v. Hub*

---

[5] Confirming the error, the advertiser defendants made the identical argument in the subsequent merits section of their brief below. *See id*. at ROA.1028, 1030 (arguing X's rule of reason claims fails because "X does not allege that the challenged restraint harms competition" in the section of its brief entitled "X does not satisfy the elements of a rule of reason claim because it fails to allege anticompetitive effects.").

*Int'l, Ltd.*, 802 F.3d 732, 738 (5th Cir. 2015) ("[T]he court should assume the existence of a violation and then ask whether the . . . standing elements are shown," including "whether the plaintiff … has experienced 'antitrust injury' from the violation.") (quoting Areeda & Hovenkamp § 335f (4th ed. 2014)); *Doctor's Hosp.*, 123 F.3d at 306 ("Standing analysis can be most helpful in the atypical antitrust case if the court assumes an antitrust violation has occurred.") (citing same, 1995 ed.); *see also Associated Gen. Contractors*, 459 U.S. at 528, 528 n.17 ("[T]he Court of Appeals properly assumed that [defendant's conduct] might violate the antitrust laws" notwithstanding that "it might well have been evident that no violation of law had been alleged."); *Gelboim*, 823 F.3d at 770 ("To avoid a quagmire, this Court (among others) assumes 'the existence of a violation in addressing the issue of [antitrust] standing,'" but the district court "elided the distinction between antitrust violation and antitrust injury by placing considerable weight on appellants' failure to show harm to competition.") (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 437 (2d Cir. 2005) (internal quotation marks omitted). Assuming a violation ensures courts "apply traditional principles of statutory interpretation" to determine "whether [the plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue" under the Clayton Act, *Lexmark*, 572 U.S. at 128, identifying the "point beyond which [a] *wrongdoer* should not be held liable." *Associated Gen. Contractors*, 459 U.S. at 535 (emphasis added).

In a leading article, Ronald Davis provides a trenchant example of why the proper approach is to either (1) assume a violation, or (2) bypass the antitrust injury question and proceed directly to the merits allegations. Namely, "[i]t makes more sense to hold, 'the restraint was reasonable because there was no showing of consumer injury [i.e., harmful anticompetitive effect],' than to hold, 'we haven't got a clue about whether the restraint was reasonable or unreasonable, but there was no consumer injury, so there was no antitrust injury.'" Davis at 732. Davis elaborates:

> If a plaintiff tries to make an antitrust case by alleging that the defendant spat in the street, it would be ridiculous for the court to respond, "Now I know that spitting in the street is not an antitrust violation. But suppose it were. What would be the anticompetitive effect of spitting in the street, and has this plaintiff [pleaded] any such effect?" To try to answer a question in that form is to undertake a fool's errand.

*Id.*

The advertiser defendants sent the district court on that errand by arguing for Davis's first type of holding but then asking the court to make the second type. First, the advertiser defendants argued on the merits that X suffered a "[l]oss from competition itself—that is, loss in the form of customers' choosing the competitor's goods and services over the plaintiff's." ROA.1030. In other words, they argued that the restraint was reasonable. Davis at 732.

Second, the advertiser defendants argued that X's allegations are "insufficient to plead anticompetitive effects": "the Complaint alleges 'no factual information

16

about other competitors dropping out of the market, significant price changes, or diminution in … quality.'" ROA.1030 (quoting *Marucci Sports, L.L.C. v. NCAA.*, 751 F.3d 368, 377 (5th Cir. 2014)). In other words, they argued that there was no showing of harmful anticompetitive effect. Davis at 732.

Having made those arguments, the advertiser defendants should have moved the court to rule that the plaintiff failed to state a rule of reason claim on the merits, but they chose not to rely on *Twombly*. *See* ROA.1028–31. By instead asking the district court to dismiss for a lack of standing to sue, they asked it to consider whether the plaintiff claimed relief for an anticompetitive effect of what they consider spitting in the street. Davis at 732; *cf. Gelboim*, F.3d at 777 ("Neither *ARCO* nor *Brunswick* treated antitrust injury as one that could not have been suffered under normal competitive conditions.").

Davis illustrates that applying the antitrust injury test in the absence of harm to competition is not just inadvisable; it is incoherent. But the advertiser defendants went further by asking the district court to hold that the absence of substantive liability *determines* a lack of antitrust injury (and therefore standing to sue). ROA.1019. That is an extraordinary claim that proves too much. Its premise is that plaintiffs must show a merits violation to have standing.

If the advertiser defendants were right, then courts could not hold that a plaintiff has established antitrust injury but subsequently rule in favor of the

17

defendant on the merits, because the plaintiff's standing would mean that it established a violation on the merits. Yet, courts routinely do so. *See, e.g.*, *Eichorn v. AT&T Corp.*, 248 F.3d 131, 142, 145–46 (3d Cir. 2001) (The plaintiffs adequately pled antitrust injury and antitrust standing but their claim failed on the merits because the defendant did not in fact violate the antitrust laws.); *Willow Creek Fuels, Inc. v. Farm & Home Oil Co.*, No. 08-5417, 2009 U.S. Dist. LEXIS 85400, at *9–*10 (E.D. Pa. Sept. 18, 2009) (The plaintiff adequately alleged antitrust injury but failed to adequately allege the agreement element of a conspiracy). The reverse is also true. Courts routinely hold that plaintiffs lack antitrust standing because they fail the antitrust injury test notwithstanding that a violation on the merits is confirmed as a matter of law. *ARCO*, 495 U.S. at 346 (competitor-plaintiff lacked antitrust injury despite per se illegality of alleged maximum price fixing).

Under the advertising defendants' approach, no losing case could ever amount to a final decision. Because antitrust injury is a "threshold" for standing, *Tesla, Inc. v. La. Auto. Dealers Ass'n*, 113 F.4th 511, 528 (5th Cir. 2024) (quoting *Sanger*, 802 F.3d at 737), the defendant could not obtain a binding judgment in a case where the plaintiff is found to lack antitrust standing; both it and the judicial system would have to entertain serial lawsuits by other plaintiffs for conduct that does not violate the antitrust laws. *Cf. Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009) (Posner, J.) (Article III standing established at the pleading

stage "by a claim of injury that is not successfully challenged at that stage is not lost when at trial the plaintiff fails to substantiate the allegation of injury; instead the suit is dismissed on the merits"; "to say that if a plaintiff loses his case, this shows that he had no standing to sue … would be an absurd result.").

Consider, in particular, the prospect of subsequent suits by the federal government. The Chairman of the FTC has suggested that GARM "sought to marshal its members into collective boycotts to destroy publishers" and that its conduct is "harmful and potentially unlawful." Statement of Chairman Andrew M. Ferguson at 4–5, Fed. Trade Comm'n, *In the Matter of Omnicom Group / the Interpublic Group of Cos.*, Matter No. 2510049 (June 23, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/omnicom-ipg-ferguson-statement_0.pdf. The antitrust injury doctrine does not apply to the federal antitrust agencies because they bring suit under Section 4 of the Sherman Act, which grants automatic standing to sue. *See, e.g., Doctor's Hosp.*, 123 F.3d at 306 (The government "enjoys automatic standing") (quoting *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996)); *Daniel*, 428 F.3d at 436 ("[W]hile the United States is authorized to sue anyone violating the federal antitrust laws, a private plaintiff must demonstrate standing.") (internal quotation marks omitted); *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 n.10 (9th Cir.

2021).[6] Yet, if the district court ruled on antitrust injury grounds rather than the plausibility of the merits pleadings, the FTC can simply pick up where X left off notwithstanding that the district court concluded "there is no antitrust violation here." ROA.2449.

As the Areeda & Hovenkamp treatise explains:

When a court concludes that no violation has occurred, it has no occasion to consider standing…. But several courts have unfortunately denied standing when they really meant that no violation occurred. In particular, the antitrust injury element of standing demands that the plaintiff's alleged injury result from the threat to competition that underlies the alleged violation. A court seeing no threat to competition in a rule-of-reason case may then deny that the plaintiff has suffered antitrust injury and dismiss the suit for lack of "standing." Such a ruling would be erroneous, for the absence of any threat to competition means that no violation has occurred and that even suit by the government—which enjoys automatic standing—must be dismissed.

Areeda & Hovenkamp § 335f.

The relevant point is not the tautology that the antitrust injury test is not satisfied in the absence of a violation, as the advertising defendants argued; it is that the test must begin from the premise that the plaintiff has stated a claim upon which antitrust relief may be granted. *Id*.; *see* Davis at 732. That the plaintiff has failed to state a plausible claim, or may be fated to eventually lose on the merits at trial, does

---

[6] The FTC enjoys automatic standing under Section 5 of the FTC Act, which impliedly grants the same authority that Section 4 of the Sherman Act grants to the DOJ. *FTC v. Cement Institute*, 333 U.S. 683, 693 (1948).

not bear on the question of whether Congress permitted the plaintiff's cause of action such that it is "entitled to a chance to prove its case." *Lexmark*, 572 U.S. at 140.

Here, the plaintiff claims injury caused by a group of buyers who allegedly boycotted a seller of digital advertising space. ROA.537, ¶ 154. It alleges that the buyers, collectively, have monopsony power in a market for digital advertising space sold by social media platforms. ROA.535, 537–38, ¶¶ 146, 149, 153. And it claims that the alleged boycott restrained trade in this market by excluding X, injuring X by denying it the opportunity to compete for sales and thereby depriving it of revenue. *See* ROA.538, ¶ 155.

These allegations easily satisfy the antitrust injury test. They establish that X claims losses from a competition-reducing aspect of the alleged conduct, because the losses would be attributable to profits X would have realized if the advertisers had competed to purchase X's advertising space (assuming a violation). X does not claim losses attributable to profits it would have *gained* absent the alleged boycott. *See Brunswick*, 429 U.S. at 488.[7] But the fact that X easily cleared the pleading bar

---

[7] X's opening brief refers to X as a "supplier," Opening Br. at 26, and the complaint alleges that the boycott harmed users in a market for X's platform. *See* ROA.538 ¶ 155 ("[T]he boycott has reduced X's ability to invest in new or improved functionality, thus harming *the consumers who use X's platform*.") (emphasis added). That market may not prove to be the same market for advertising space where X alleges that trade was restrained unreasonably. *Cf. Cass Student Adver., Inc. v. Nat'l Educ. Adver. Serv., Inc.*, 516 F.2d 1092, 1098 (7th Cir. 1975) ("In this case, the national advertiser is the 'ultimate purchaser', that is, it buys page space

for antitrust injury does not bear on the question of whether X plausibly pleaded harm to competition sufficient to state a claim on the merits.

### 3. The proper inquiry here is whether X plausibly alleged harm to competition on the merits under *Twombly*.

The district court's opinion is remarkably elusive on the subject of its actual holding. The heading in the operative section of the opinion is entitled "*X Failed to State a Claim Under 15 U.S.C. § 1 Because X Has Not Suffered Antitrust Injury*." ROA.2443. The placement of "Because" in that sentence unambiguously suggests the case was decided, incorrectly, on the issue of standing, not the merits. At various points, the court also said flatly (and incorrectly) that "X has not stated an antitrust injury" and "no antitrust injury exists." ROA.2444, 2445. And the court saw fit to address the question of whether X is entitled to replead, which implies it did not reach a merits decision insofar as dismissal with prejudice would have been a foregone conclusion. *See* ROA.2449–50.

However, in its summation of the operative section, the district court said something completely different: "Because X does not allege that Defendants acted to restrain competition, it has failed to state either of its claims under the Sherman Act." ROA.2449. The placement of "Because" in that sentence unambiguously suggests the case was decided on the merits for failure to adequately allege harm to

---

from the college newspaper."). But that is not a bar to antitrust standing. *Blue Shield of Va. v. McCready*, 457 U.S. 465, 478–81 (1982).

22

competition, not the issue of standing. At one point, the court said flatly that "X does not allege that Defendants acted to restrain competition" and "there is no antitrust violation here." *Id*. And although the court addressed the question of whether X is entitled to replead, its reason for dismissing with prejudice was that "the alleged conspiracy does not state an antitrust claim." ROA.2450.

All of the reasons the district cited for dismissing the plaintiff's claim are merits reasons that informed its finding that defendants have not acted to harm competition. *See, e.g.*, ROA.2446 (noting that the conspiracy was not alleged to have furthered X's competitors' interests); ROA.2447 (noting that none of X's competitors allegedly directed the boycott); ROA.2448 (noting that the complaint does not allege conspirators sought to compete with X); *id.* (noting that the complaint does not allege the conspiracy attempted to force X to sell to particular advertisers); *id.* (noting that the complaint does not allege conspirators sought to control the social media advertising market or any other market); *but see* Opening Br. at 26–33 (arguing that the district court's merits analysis is erroneous). However, the district court did not cite or purport to apply *Twombly*'s plausibility standard when discussing X's allegations.

The district court also intimated in several places that it perceived X's allegations to have more of the flavor of a business tort than an antitrust violation. *See* ROA.2443; ROA.2444 (noting that the conduct has resulted in advertisers no

23

longer being willing to pay X as much for X's advertising space). That too goes to the merits of X's claim, not X's standing to sue, as the Supreme Court clarified in *Nynex*. 525 U.S. 128. There, a powerful buyer injured a seller by perpetrating a fraud against it, which caused the injured seller to lose sales to a rival seller owned by the perpetrator as a subsidiary. *Id*. at 130–33, 137. The district court dismissed the injured seller's antitrust claim on the merits, but the Second Circuit reversed. *Id*. After granting certiorari, the Supreme Court reversed the Second Circuit, holding that the powerful buyer did not adequately allege an antitrust violation. *Id*. at 135–37. The plaintiff failed to plead a merits violation because it did not adequately allege harm to competition. *Id*. at 135.

In *Nynex*, the defendant had asked the district court to dismiss on both the merits and antitrust injury grounds. *Discon, Inc. v. Nynex Corp.*, No. 90-CV-546A, 1992 U.S. Dist. LEXIS 22722, *17 n.4 (W.D.N.Y., June 23, 1992). But upon concluding that the plaintiff's claim failed on the merits, that court correctly bypassed the antitrust injury question. It explained that "Defendants' challenge to Discon's standing—which is founded on the tautology that Discon alleges no antitrust injury because it alleges no antitrust violation—need not be addressed." *Id*.

None of the district court's reasons for dismissal are capable of informing a finding on whether X's claimed injury is within the zone of Sherman Act's interest in protecting the competitive process and the Clayton Act's interest in affording a

cause of action to private victims allegedly injured by reason of boycotts. All inform the different and unrelated question of whether the plaintiff adequately pleaded harm to competition.

This Court should clarify the difference between antitrust injury and an antitrust violation. The antitrust-injury question requires inquiry into whether X's injuries are within the antitrust laws' statutory zone of interests if the alleged boycott does in fact harm competition, not a prudential judgement that the case is not worth trying because it is unmeritorious. Whether X has adequately pleaded harm to competition is properly considered under the plausibility standard set forth in *Twombly*.

## CONCLUSION

For the foregoing reasons, the Court should clarify the distinction between antitrust injury and an antitrust violation.

Respectfully submitted,

*/s/ David. O. Fisher*
DAVID O. FISHER
   *Counsel of Record*
RANDY STUTZ
AMERICAN ANTITRUST INSTITUTE
1025 Connecticut Avenue, NW
Suite 1000
Washington, D.C. 20036
(202) 905-5420
dfisher@antitrustinstitute.org

*Counsel for Amicus Curiae*

Dated: August 12, 2026

**CERTIFICATE OF SERVICE**

I certify that on August 12, 2026, I served the foregoing brief on counsel of record using the Court's electronic case filing system. All counsel of record are registered ECF filers.

s/ David. O. Fisher

Dated: August 12, 2026

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,347 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and that it complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft Word Version 2607 in 14 point Times New Roman type.

s/ David O. Fisher

Dated: August 12, 2026