**No. 26-10394**

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

---

**X CORP.,**

***Plaintiff-Appellant,***

**v.**

**MARS, INCORPORATED; CVS HEALTH CORPORATION; NESTLE SA; NESTLE USA, INCORPORATED; ABBOTT LABORATORIES; COLGATE-PALMOLIVE COMPANY; LEGO A/S; LEGO BRAND RETAIL, INCORPORATED; PINTEREST, INCORPORATED; TYSON FOODS, INCORPORATED; SHELL USA, INCORPORATED; SHELL BRANDS INTERNATIONAL AG; ORSTED SERVICES A/S,**

***Defendants-Appellees.***

---

On Appeal from the United States District Court,
for the Northern District of Texas
No. 7:24-CV-114, Hon. Jane J. Boyle, Presiding

---

**AMICUS BRIEF OF PROFESSOR MAGGIE GARDNER IN SUPPORT OF AFFIRMANCE OF DISMISSAL FOR LACK OF PERSONAL JURISDICTION**

---

William J. Boyce
Texas Bar No. 02760100
bboyce@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
1844 Harvard Street
Houston, Texas 77008-4342
Telephone: (713) 523-2358

**ATTORNEY FOR AMICUS CURIAE PROFESSOR MAGGIE GARDNER**

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following list of persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

**No. 26-10394**

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

---

**X CORP.,**

***Plaintiff-Appellant,***

**v.**

**MARS, INCORPORATED; CVS HEALTH CORPORATION; NESTLE SA; NESTLE USA, INCORPORATED; ABBOTT LABORATORIES; COLGATE-PALMOLIVE COMPANY; LEGO A/S; LEGO BRAND RETAIL, INCORPORATED; PINTEREST, INCORPORATED; TYSON FOODS, INCORPORATED; SHELL USA, INCORPORATED; SHELL BRANDS INTERNATIONAL AG; ORSTED SERVICES A/S,**

***Defendants-Appellees*.**

**Amicus Curiae:** Professor Maggie Gardner
Cornell Law School

**Counsel for Amicus Curiae:** William J. Boyce
Alexander Dubose & Jefferson LLP

*s/ William J. Boyce*
William J. Boyce
Counsel for Amicus Curiae

# TABLE OF CONTENTS

Supplemental Certificate of Interested Persons .......... i
Table of Contents .......... ii
Index of Authorities .......... iii
Interest of Amicus Curiae .......... 1
Summary of Argument .......... 2
Argument .......... 5
I. There Is No Clear Historical Evidence For Unlimited Personal Jurisdiction .......... 6
A. No Early Jurist Held That Congress Could Approve Unlimited Personal Jurisdiction .......... 6
B. This Court Should Not Be Distracted By Questions Of Subject-Matter Or Legislative Jurisdiction .......... 10
II. This Court Should Affirm The Personal Jurisdiction Dismissal Under Rule 4(k)(2) .......... 12
A. The Fifth Amendment Requires Some Conduct Connected To The United States .......... 13
B. The Fifth Amendment May Require The Exercise Of Personal Jurisdiction To Be Reasonable .......... 15
C. Appellant Did Not Carry Its Burden Regarding Shell Brands International AG's Connected Conduct .......... 16
Conclusion .......... 17
Certificate of Conference and Consent to Filing .......... 18
Certificate of Compliance .......... 18
Certificate of Service .......... 19

## **Index of Authorities**

### **Cases**

*Anderson v. Biegler GMBH*,
No. 24-CV-01603-NYW-SBP, 2026 WL 2672574 (D. Colo. Sept. 11, 2026) .......... 5

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
480 U.S. 102 (1987) .......... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 16

*Devas Multimedia Priv. Ltd. v. Antrix Corp.*,
187 F.4th 1077 (9th Cir. 2026) .......... 5

*In re Diisocyanates Antitrust Litig.*,
No. 18-1001, 2026 WL 522845 (W.D. Pa. Feb. 25, 2026) .......... 5

*Fuld v. Palestine Liberation Organization*,
606 U.S. 1 (2025) .......... *passim*

*Gligorov v. Nation of Brunei*,
185 F.4th 1169 (D.C. Cir. 2026) .......... 5

*Ex Parte Graham*,
10 F. Cas. 911 (C.C.E.D. Pa. 1818) .......... 9

*Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*,
608 U.S. 235 (2026) .......... 10

*King v. Bon Charge*,
823 F. Supp. 3d 508 (D. Del. 2025) .......... 2

*Monkton Ins. Servs., Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) .......... 16

*Nat'l Lab. Rels. Bd. v. Universal Smart Conts., LLC*,
166 F.4th 304 (2d Cir. 2026) .......... 5

*Nat'l Mut. Ins. Co. v. Tidewater Transfer Co., Inc.*,
337 U.S. 582 (1949) .......... 7

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
808 F. Supp. 3d 609 (S.D.N.Y. 2025) ....................................................5

*Picquet v. Swan*,
19 F. Cas. 609 (C.C.D. Mass. 1828)...........................................................*passim*

*Rodriguez v. Imperial Brands PLC*,
182 F.4th 1333 (11th Cir. 2026) ...............................................................5, 10, 15

*Toland v. Sprague*,
37 U.S. 300 (1838)..........................................................................................8, 9

*X Corp. v. World Fed'n of Advertisers*,
826 F. Supp. 3d 772 (N.D. Tex. 2026) ................................................3, 13, 14, 15

**Constitutional Provisions**

U.S. Const. art. I, § 8, cls. 10 ...........................................................................10

**Other Authorities**

JOSEPH STORY, COMMENTARIES ON THE CONFLICT OF LAWS, FOREIGN AND DOMESTIC § 539 (Boston, Hilliard, Gray & Co. 1834)..................................9

JOSEPH STORY, COMMENTARIES ON THE CONFLICT OF LAWS, FOREIGN AND DOMESTIC § 547 (Boston, Hilliard, Gray & Co. 1834) .................................9

Maggie Gardner, *Admiralty's Influence*, 91 GEO. WASH. L. REV. 1585 (2023)..........................................................................................................11, 12

Nathan S. Chapman, *Due Process Abroad*, 112 NW. U. L. REV. 377 (2017)..............................................................................................................11

## INTEREST OF AMICUS CURIAE[1]

Maggie Gardner is a Professor of Law at Cornell Law School and member of the American Law Institute who teaches and writes in the fields of civil procedure, conflicts of law, and federal courts. An expert on personal jurisdiction under both the Fifth and the Fourteenth Amendments, Professor Gardner has an academic interest in aiding the well-informed development of personal jurisdiction doctrine. Her scholarship on transnational litigation has appeared in such journals as the *Stanford Law Review*, *NYU Law Review*, *Virginia Law Review*, and *University of Pennsylvania Law Review*. Her invited comment, *The Future of* Fuld, was published last winter in the *Yale Law Journal Forum*, and her analyses of the federal courts' efforts to apply *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), appear on Transnational Litigation Blog (TLBlog.org), of which she is a founding editor.

[1] No counsel for any party authored this brief in whole or in part, and no person other than amicus and her counsel made a monetary contribution for preparation or submission of this brief.

## SUMMARY OF ARGUMENT

Appellant invites this Court to "hold that the Fifth Amendment's Due Process Clause poses no relevant barrier to Congress extending personal jurisdiction over foreign actors." X Br. 52. *Amici Curiae* State of West Virginia and 11 Other States ("Amici") go even further in urging that the Fifth Amendment "imposes *no* restriction on federal personal jurisdiction." Br. of Amici Curiae State of West Virginia and 11 Other States 6 (hereinafter "Br. of Amici Curiae") (emphasis added). This sweeping proposition has never been adopted by a federal court,[2] and this Court should not be the first.

There is no direct evidence that early jurists understood Congress's power to authorize personal jurisdiction to be unlimited. The primary authority on which Amici rely is a single trial court decision in which Justice Story, riding circuit, disparaged the plaintiff's argument *for* unlimited jurisdiction. *See Picquet v. Swan*, 19 F. Cas. 609, 613 (C.C.D. Mass. 1828) (No. 11,134). Story did not say that the courts would be "bound to follow" a congressional mandate to extend jurisdiction over defendants who had no connection to the United States. *Cf.* Br. of Amici Curiae

[2] One district court case has endorsed the theory of unlimited personal jurisdiction, but only in dicta. *See King v. Bon Charge*, 823 F. Supp. 3d 508, 520 (D. Del. 2025) (as amended Apr. 30, 2026) ("Because this Court has jurisdiction over Bon Charge even under the heightened standard that *Fuld* rejected, the question that *Fuld* left for another day—the 'Fifth Amendment's outer limits on the territorial jurisdiction of federal courts'—is not dispositive." (quoting *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 19 (2025)).

11 (quoting *Picquet*, 19 F. Cas. at 615). Nor did Story propose such sweeping authority for Congress in his famed treatise on conflicts of law. Appellant and Amici can point to no historical source stating that Congress can authorize unlimited personal jurisdiction.

Instead, this Court should affirm the district court's dismissal of Shell Brands International AG for lack of personal jurisdiction. The Supreme Court's reasoning in *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), repeatedly emphasized the need for conduct by the defendant that "bears a meaningful relationship to the United States." *Id.* at 23. This is a minimal requirement that can flexibly respond to the specificity with which Congress speaks. When Congress has not specified the relevant "jurisdiction-triggering conduct" for personal jurisdiction, such as when a plaintiff relies on Federal Rule of Civil Procedure 4(k)(2), it is the defendant's dispute-related conduct that must provide the "meaningful relationship to the United States." *See X Corp. v. World Fed'n of Advertisers*, 826 F. Supp. 3d 772, 795 (N.D. Tex. 2026) (reasoning that Rule 4(k)(2) raises "the more general question" of whether the defendant's "conduct giving rise to this case or controversy [is] closely connected with the United States").

Because the Appellant did not make a prima facie showing that Shell Brands International AG in fact engaged in a conspiracy to boycott X (regardless of whether

that conduct occurred here or abroad), the district court properly dismissed the claims against it for lack of personal jurisdiction.

## ARGUMENT

This Court should decline the invitation to hold that the Fifth Amendment imposes no limits on federal personal jurisdiction. No federal court has adopted this theory,[3] while a growing number have held or assumed that some degree of connection or reasonableness is required by the Fifth Amendment. *See, e.g.*, *Rodriguez v. Imperial Brands PLC*, 182 F.4th 1333, 1349 (11th Cir. 2026) (holding that the exercise of Fifth Amendment personal jurisdiction must be reasonable); *Devas Multimedia Priv. Ltd. v. Antrix Corp.*, 187 F.4th 1077, 1089 (9th Cir. 2026) (finding that the exercise of personal jurisdiction in that case "is reasonable and thus comports with the Fifth Amendment"); *Gligorov v. Nation of Brunei*, 185 F.4th 1169, 1184 (D.C. Cir. 2026) (dismissing for lack of personal jurisdiction after plaintiff conceded that the exercise of Fifth Amendment personal jurisdiction must be reasonable); *Nat'l Lab. Rels. Bd. v. Universal Smart Conts., LL*C, 166 F.4th 304, 315 (2d Cir. 2026) (requiring exercise of Fifth Amendment personal jurisdiction to be reasonable).[4] The historical evidence for unlimited jurisdiction boils down to

---

[3] Amici's string cite consists entirely of concurrences and dissents, as well as one district court opinion that endorsed this view in dicta. *See* Br. of Amici Curiae 10-11.

[4] *See also, e.g.*, *Anderson v. Biegler GMBH*, No. 24-CV-01603-NYW-SBP, 2026 WL 2672574, at *4 (D. Colo. Sept. 11, 2026) (applying a reasonableness requirement to Fifth Amendment personal jurisdiction); *In re Diisocyanates Antitrust Litig*., No. 18-1001, 2026 WL 522845, at *11 (W.D. Pa. Feb. 25, 2026) (requiring both "a close connection, nexus, or meaningful relationship with the United States" and reasonableness); *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd*., 808 F. Supp. 3d 609, 619 (S.D.N.Y. 2025) (same).

dicta in one trial court decision, the implication of which is at best unclear. This Court should instead affirm the district court's dismissal of Shell Brands International AG for lack of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).

## I. There Is No Clear Historical Evidence For Unlimited Personal Jurisdiction

Despite the insistence of Amici, there is no direct evidence that "early federal jurists" understood "Congress's ability to extend federal court jurisdiction … worldwide" to be unlimited. *See* Brief of Amici Curiae 11. The Supreme Court was careful in *Fuld* not to address this argument precisely because "the theory is 'not easily confirmed as a historical matter.'" *Fuld,* 606 U.S. at 18 (quoting Br. for the United States 47-48). This Court should likewise hesitate to endorse such a sweeping assertion of federal power in the absence of direct historical evidence.

### A. No Early Jurist Held That Congress Could Approve Unlimited Personal Jurisdiction

The "early jurists" invoked in Amici's brief boil down to one: Justice Story in *Picquet*. But *Picquet*'s discussion of exorbitant jurisdiction was dicta, and that discussion is at best ambiguous as to what the limits of Congress's authority might be. Unclear dicta in one trial court decision is a slender reed on which to base sweeping and unchecked legislative power.

In *Picquet*, a French citizen sued a U.S. expatriate residing in Paris in federal court in Massachusetts. Justice Story held that the federal court lacked diversity jurisdiction under Article III to hear a dispute that did not involve any citizen of a U.S. state. *Picquet*, 19 F. Cas. at 616.[5] In dicta, Story also opined that the federal court could not have exercised personal jurisdiction over the expatriate based solely on attachment of the expatriate's property in Massachusetts because Congress had not clearly granted the federal courts authority to do so. *See id.* at 613-15. Such attachment jurisdiction *was* permissible in light of "universal jurisprudence" and "general principles," *id.* at 612, but because it was not a principle found in the common law of England, Story believed its application required positive statutory enactment, *id.* at 612-13. "If congress had prescribed such a rule" of foreign attachment jurisdiction, he explained, "the court would certainly be bound to follow it, and proceed upon the law." *Id.* at 615 (discussing a rule that "an alien, who has never been within the United States, may be rightfully served with a summons or other process *by any attachment of his property, however small, within the district*" (emphasis added)).

[5] In doing so, Story applied a then-standard interpretation of Article III as not reaching citizens of the United States unless they were also citizens of a particular state, an interpretation that was displaced only in 1949. *See Nat'l Mut. Ins. Co. v. Tidewater Transfer Co., Inc.*, 337 U.S. 582 (1949).

Justice Story refused, however, to infer such a rule from the general language of Section 11 of the Judiciary Act because doing so would require interpreting Section 11 as imposing *no* limit on jurisdiction over foreigners. *Id.* As Story explained, the plaintiff's proposed interpretation of Section 11 "supposes, that … where an alien is party, if he is not an inhabitant of the United States, *and has not any property within it*, (for to this extent it must reach,) still he is amenable to the jurisdiction of any circuit court, sitting in any state in this Union." *Id.* at 613 (emphasis added). If that were true,

> a subject of England, or France, or Russia, having a controversy with one of our own citizens, may be summoned from the other end of the globe to obey our process, and submit to the judgment of our courts. Such an intention, so repugnant to the general rights and sovereignty of other nations, ought not to be presumed, unless it is established by irresistible proof.

*Id.* at 613. Note that Story did not similarly opine that the courts would be bound to follow such "repugnant" legislation—only that the question need not even be considered absent "irresistible proof."[6]

Nor did any other court (until quite recently) cite *Picquet* for the proposition that Congress *could* authorize unlimited jurisdiction. Instead, in *Toland v. Sprague*, 37 U.S. 300 (1838), the Supreme Court endorsed *Picquet*'s default presumption that

[6] Amici seem to recognize this limitation in *Picquet*, as they describe *Picquet* as permitting jurisdiction over "*just about* any defendant worldwide," Brief of Amici Curiae 11 (emphasis added), "based on *nearly* non-existent contacts," *id.* at 12 (emphasis added). There may not be much daylight between those qualifications and the test applied by the district court below.

the circuit courts could only issue process within the borders of their assigned judicial districts. *Id.* at 330 (recapping the four "propositions" from *Picquet* with which the Court agreed).[7] *Toland* acknowledged that Congress could overcome this presumption if it had "authorized civil process from any circuit court, to have run into any state of the Union," *id.* at 328—not, notably, anywhere in the world. Indeed, in his own treatise, Justice Story only cited *Picquet* for the exact opposite proposition: that "no sovereignty can extend its process beyond its own territorial limits, to subject either persons or property to its judicial decisions." JOSEPH STORY, COMMENTARIES ON THE CONFLICT OF LAWS, FOREIGN AND DOMESTIC § 539, at 450 (Boston, Hilliard, Gray & Co. 1834); *see also id.* § 547, at 459 (citing *Picquet* as recognizing that process "can never be applied to a person, who, for aught appears, never was present within, or subject to the jurisdiction" of the sovereign). Nowhere in his treatise did Story even suggest that Congress's authority to authorize personal jurisdiction for the federal courts was unlimited.

In sum, there is no "smoking gun" evidence that early jurists would have enforced legislation asserting unlimited personal jurisdiction over foreign

[7] *Ex Parte Graham*, 10 F. Cas. 911 (C.C.E.D. Pa. 1818) (No. 5,657), similarly concluded that the circuit courts presumptively could not issue process to reach other judicial districts within the United States. *Id.* at 913. In that case, Justice Washington, riding circuit, presumed that Congress *could* "vest in the courts of the United States an extra-territorial jurisdiction in prize cases," but only "over persons and things *found in a [U.S.] district* other than that from which the process issued." *Id.* at 913 (emphasis added). By "extra-territorial," in other words, Washington meant the power to issue process beyond district lines but still within the United States.

defendants residing outside of the United States. The best, and really only, evidence that Amici have identified is a possible implication in the dicta of a non-binding trial court decision.

### B. This Court Should Not Be Distracted By Questions Of Subject-Matter Or Legislative Jurisdiction

Perhaps reflecting this lack of direct evidence, Amici invoke Congress's power to prescribe extraterritorial laws and grant subject-matter jurisdiction over extraterritorial conduct. Br. of Amici Curiae 11. This is a red herring: which law applies to a dispute and what kinds of disputes a court may hear are distinct questions from whom the court may bind.

For example, Amici cite as support for unlimited federal personal jurisdiction Congress's power to "define and punish Piracies and Felonies committed on the high Seas" and to "make Rules concerning Captures on Land and Water." *Id.* at 11 (quoting U.S. Const. art. I, § 8, cls. 10,11). There is no doubt that Congress may adopt laws that apply to conduct that occurs outside the United States. *See, e.g.*, *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, 608 U.S. 235, 246 (2026) (applying Helms-Burton Act to the use of property located in Cuba). That does not answer the question of whom a U.S. court may apply that law to. *See Rodriguez*, 182 F.4th at 1349 (holding that, despite the extraterritorial reach of the Helms-Burton Act, the exercise of personal jurisdiction over a foreign defendant for foreign conduct several steps removed from the use of property in Cuba would be

unreasonable). Similarly, while early federal statutes outlawed piracies and other crimes on the high seas, *see* Nathan S. Chapman, *Due Process Abroad*, 112 NW. U. L. REV. 377, 406 (2017), those laws still required conviction before a federal court, *id.* at 414, which in turn required the defendant's physical presence in the United States.

Amici also cite the first Judiciary Act's grant of subject-matter jurisdiction over admiralty and maritime causes arising in international waters. Br. of Amici Curiae 11. What categories of disputes the federal courts may hear is, again, a distinct question from which parties a court can bind. *See, e.g.*, *Picquet*, 19 F. Cas. at 612 (explaining that the existence of diversity jurisdiction "is not sufficient to give the court complete authority to proceed to judgment," as there must also be "a just foundation of jurisdiction" over the defendant). Indeed, given the global scope of admiralty jurisdiction, historically the only limit on admiralty claims in U.S. court *was* personal jurisdiction, which was based on the presence within the judicial forum of either the individual defendant (for *in personam* jurisdiction) or the vessel connected to the dispute (for *in rem* jurisdiction). *See* Maggie Gardner, *Admiralty's Influence*, 91 GEO. WASH. L. REV. 1585, 1588 (2023). In particular, many admiralty claims give rise to implied liens on the vessel itself, which allow the claimant to proceed *in rem* against the vessel wherever it is found. *See id.* at 1589 (listing as examples of implied liens claims for "wages, salvage, collision, personal injur[ies],

repairs, and the provision of 'necessaries'"). It was thus not uncommon for federal courts sitting in admiralty to hear disputes between foreigners regarding conduct that occurred outside the United States—but the vessel against which the claimant asserted his implied lien had to be within the U.S. court's territorial jurisdiction. *See id.*

Piracy laws and admiralty cases that reached extraterritorial conduct thus do not shed light on the permissible scope of federal personal jurisdiction: those examples all involved defendants or property located within the United States. In short, Appellant and Amici have identified no clear evidence of an original understanding that federal personal jurisdiction was unlimited in scope.

## II. This Court Should Affirm The Personal Jurisdiction Dismissal Under Rule 4(k)(2)

The district court correctly reasoned that Fifth Amendment personal jurisdiction requires that the defendant engage in some conduct connected to U.S. interests and that the exercise of personal jurisdiction may also need to be reasonable. When Congress has not specified what conduct triggers U.S. interests for jurisdictional purposes, the relevant conduct should be connected to the dispute. Because the Appellant did not carry its burden of identifying Shell Brands International AG's conduct connected to this dispute, this Court should affirm the district court's dismissal for lack of personal jurisdiction under Rule 4(k)(2).

### A. The Fifth Amendment Requires Some Conduct Connected To The United States

Beyond holding that the Fifth Amendment "necessarily permits a more flexible jurisdictional inquiry" than the Fourteenth Amendment, *Fuld* declined to identify the outer limits of Fifth Amendment personal jurisdiction. 606 U.S. at 16, 18. However, in upholding the constitutionality of the Promoting Security and Justice for Victims of Terrorism Act (PSJVTA), the Supreme Court repeatedly emphasized that statute's reliance on conduct connected to U.S. interests. *See id.* at 18 ("The PSJVTA ties federal jurisdiction to *conduct closely related* to the United States that implicates important foreign policy concerns." (emphasis added)); *id.* at 21 ("[T]he PSJVTA ties jurisdiction to *specific and narrow conduct* that *directly implicates* issues of sensitive and ongoing concern in respondents' relationships with the United States." (emphasis added)); *id.* at 23 ("[W]e hold that the statute ties the assertion of jurisdiction to predicate conduct that in and of itself *bears a meaningful relationship* to the United States ...."). As the district court discerned, "[t]he Supreme Court in *Fuld* excised from the Fifth Amendment analysis any limitation that would require assessing only contacts with the geographic territory of the United States," *X Corp.*, 826 F. Supp. 3d at 794, but it still "engaged in a basic test to check that the exercise of personal jurisdiction . . . was 'tie[d] . . . to conduct closely related to the United States' even if the conduct occurred abroad," *id.* at 793 (quoting *Fuld*, 606 U.S. at 18).

This requirement of conduct closely related to the United States is a sensible and appropriately flexible limit for Fifth Amendment personal jurisdiction. Requiring conduct by the defendant that triggers U.S. interests is a minimal bar that ensures that the assertion of government power will be neither fundamentally unfair nor arbitrary and capricious.[8] This inquiry can also adapt to the clarity with which Congress has spoken: if Congress specifically authorizes personal jurisdiction, thereby permitting recourse to Rule 4(k)(1)(C), that statutory language will establish what conduct is sufficiently connected to the United States to trigger jurisdiction. *See id.* at 794 (reasoning that for such statutes, like the PSJVTA, the defendant must "perform[] the jurisdiction-triggering conduct that Congress specified"). When Congress has not spoken as clearly, thereby requiring recourse to Rule 4(k)(2), the "meaningful relationship to the United States," *Fuld*, 606 U.S. at 23, is established by "conduct leading to the plaintiff's injury," *X Corp.*, 826 F. Supp. 3d at 794. Thus, for Rule 4(k)(2), the question is whether "the conduct giving rise to this case or controversy [is] closely connected with the United States," regardless of where that conduct occurred. *Id.* at 795.

[8] Amici assert that *Fuld* disclaimed any fairness considerations for Fifth Amendment personal jurisdiction. Br. of Amici Curiae 15. To the contrary, the Supreme Court in *Fuld* explained that the Fourteenth Amendment's limits on personal jurisdiction are inextricably intertwined with horizontal federalism concerns, such that the "general fairness considerations" that may be "germane" to both the Fifth and Fourteenth Amendment cannot *by themselves* justify applying the Fourteenth Amendment rubric directly to the Fifth Amendment context. *See Fuld*, 606 U.S. at 17-18. The implication is that the Supreme Court meant to excise federalism concerns from Fifth Amendment personal jurisdiction, but not fairness considerations.

### B. The Fifth Amendment May Require The Exercise Of Personal Jurisdiction To Be Reasonable

*Fuld* considered but did not decide whether the exercise of Fifth Amendment personal jurisdiction must be reasonable, as assessed by "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." 606 U.S. at 24 (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)). Following *Fuld*'s lead, the district court analyzed reasonableness for one foreign defendant (the World Federation of Advertisers) for whom the connected-conduct test was satisfied. *X Corp.*, 826 F. Supp. 3d at 795-96. Because the district court found the exercise of personal jurisdiction to be reasonable, it did not need to hold that reasonableness was required. This Court may similarly find it unnecessary to resolve that question, but for a different reason: if there is no connecting conduct, there is no need to consider whether reasonableness also would be required.

Alternatively, if this Court does *not* recognize a connected-conduct requirement, it should follow the Eleventh Circuit in holding that the exercise of Fifth Amendment personal jurisdiction must at least be reasonable. *See, e.g.*, *Rodriguez*, 182 F.4th 1333 at 1349. The exercise of personal jurisdiction over Shell Brands International AG would not be reasonable, at least in the absence of conduct connected to this dispute. The U.S. interest in a dispute is inextricably intertwined with the existence of conduct connected to U.S. interests (as defined by the relevant

statute). *Cf. Fuld*, 606 U.S. at 24 ("For largely the same reasons that we conclude there is a close connection between the [statute's jurisdiction-triggering] conduct and the United States, it follows that the forum sovereign has a substantial interest in adjudicating the dispute."). Further, in the absence of connected conduct, the defendant may not have notice of the potential for U.S. adjudication. *Cf. id.* (emphasizing the notice provided by the PSJVTA). Whether under a connected-conduct test or a reasonableness requirement, then, the lack of conduct connected to the dispute would doom the assertion of personal jurisdiction.

### C. Appellant Did Not Carry Its Burden Regarding Shell Brands International AG's Connected Conduct

"The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citation omitted). The district court correctly reasoned that Appellant must connect Shell Brands International AG not just to the Global Alliance for Responsible Media ("GARM"), but to GARM's alleged boycott of Appellant. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (explaining that "an allegation of parallel conduct and a bare [conclusory] assertion of conspiracy will not suffice" to state an antitrust claim). Appellant has not made that basic showing. This Court should thus affirm the dismissal of Shell Brands International AG for lack of personal jurisdiction.

## CONCLUSION

For these reasons, Amicus Curiae Professor Maggie Gardner urges this Court not to hold that the Fifth Amendment poses no limits on federal personal jurisdiction and to affirm the district court's dismissals of Shell Brands International AG for lack of personal jurisdiction.

Respectfully submitted,

*s/ William J. Boyce*
William J. Boyce
Texas Bar No. 02760100
bboyce@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
1844 Harvard Street
Houston, Texas 77008-4342
Telephone: (713) 523-2358

ATTORNEY FOR AMICUS CURIAE

## CERTIFICATE OF CONFERENCE AND CONSENT TO FILING

Pursuant to Fifth Circuit Rule 27.4, I certify that all parties have conferred and given blanket consent for the filing of amicus briefs in Case No. 26-10394. Therefore, the filing of this amicus brief is not opposed.

*s/ William J. Boyce*
William J. Boyce
Counsel for Amicus Curiae

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This document complies with the type-volume limit of FED. R. APP. P. 29(b)(4) because, excluding the parts of the document exempted by FED. R. APP. P. 32(a)(7)(B)(iii), it contains 3,812 words.

2. This document complies with the typeface and type-style requirements of FED. R. APP. P. 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word in 14-point font, Times New Roman type style, except for footnotes, which are in 12-point font as permitted by Fifth Circuit Rule 32.1.

*s/ William J. Boyce*
William J. Boyce
Counsel for Amicus Curiae

## CERTIFICATE OF SERVICE

I certify that on November 10, 2026, I electronically filed this amicus brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ William J. Boyce*
William J. Boyce
Counsel for Amicus Curiae